IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-523-FL

| | | |
|---|---|---|
| JANE DOE, by her next friend, Tonisha Pullen-Smith, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTIAN QUALLY, individually and as an agent of Cumberland County Schools; CLARENCE SCOFIELD, individually and as an agent of Cumberland County Schools; and CUMBERLAND COUNTY BOARD OF EDUCATION (Cumberland County Schools), | ) | ORDER |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon motions to dismiss filed by defendants Cumberland County Board of Education ("School Board") (DE 14, 29) and Christian Qually ("Qually") (DE 31). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendant School Board's motions are granted in part and denied in part, and defendant Qually's motion is granted.

## STATEMENT OF THE CASE

Plaintiff Jane Doe, a minor, by her next friend Tonisha Pullen-Smith ("Pullen-Smith"), commenced this action October 5, 2020, by filing motion for leave to proceed in forma pauperis, with proposed complaint, asserting a claim for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681, et seq., ("Title IX") against defendant School Board; a claim for violation

of the Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, against defendant Clarence Scofield ("Scofield"); and state law claims for negligent infliction of emotional distress against defendants Scofield and Qually.[1] Plaintiff seeks compensatory damages, attorneys' fees and costs, and jury trial.

On October 26, 2020, defendant School Board filed the instant first motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient process and service of process, and failure to state a claim upon which relief can be granted. In support, defendant School Board relies upon a memorandum of law and a copy of an insurance policy issued to defendant School Board ("the Policy"). On November 6, 2020, United States Magistrate Judge Robert T. Numbers, II, granted plaintiff's motion to proceed in forma pauperis, and upon frivolity review pursuant to 28 U.S.C. § 1915, allowed plaintiff's claims to proceed. Later that day, the clerk issued summonses as to all defendants, and plaintiff responded in opposition to defendant School Board's first motion to dismiss.

On November 30, 2020, defendant School Board replied in support, relying upon unpublished orders in the cases Shaver v. Cooleemee Volunteer Fire Dep't, No. 1:07-CV-175, 2008 WL 942560 (M.D.N.C. April 7, 2008) and J.W. v. Johnston Cnty. Bd. of Educ., No. 5:11-CV-707-D, 2014 WL 4771613 (E.D.N.C. Sept. 24, 2014), and filed the instant second motion to dismiss, re-raising all grounds for dismissal asserted in its first motion, except insufficient process and service of process. That same day, defendant Qually filed the instant motion to dismiss, seeking dismissal of plaintiff's complaint for lack of subject matter jurisdiction and personal jurisdiction.

---

[1] Plaintiff originally filed her complaint on the docket, separate from her motion to proceed in forma pauperis. Following notice of deficiency issued by the court, plaintiff filed a corrected motion to proceed in forma pauperis, attaching a proposed complaint thereto October 15, 2020.

On December 23, 2020, defendant Scofield answered plaintiff's complaint, and one week later, the court entered its initial order on planning and scheduling. Plaintiff responded in opposition to defendant Qually's motion to dismiss and defendant School Board's second motion to dismiss January 4, 2021. A few weeks later, defendant Qually replied in support of his motion to dismiss. The court entered case management order February 10, 2021, with a deadline for discovery to conclude by September 30, 2021, and dispositive motions by November 1, 2021.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. Beginning in August 2018, while plaintiff was a 12-year-old student at South View Middle School ("SVMS") in Cumberland County, North Carolina, she was allegedly sexually molested by a female student, C.F., who was two years older than plaintiff, in the SVMS bathroom, on the SVMS school bus, and off of SVMS property. (Compl. (DE 22) ¶¶ 5, 8, 11, 16-18, 20). When plaintiff attempted to stop the alleged abuse, C.F. allegedly threatened, assaulted, and bullied her, and encouraged other students to do the same. (Id. ¶¶ 18-19, 22-24). Several teachers allegedly witnessed the bullying, and plaintiff wrote letters to her teachers reporting the bullying. (Id. ¶¶ 26-27). In response, plaintiff's teachers allegedly stated that C.F. and plaintiff were merely "experiencing ups and downs." (Id.).

In or around January 2019, C.F. allegedly choked plaintiff in the school hallway in front of several students. (Id. ¶ 33). Plaintiff reported the alleged incident to a teacher, Ms. Fux, who called the principal of SVMS, defendant Qually. (Id. ¶¶ 26, 33). After plaintiff informed defendant Qually about the alleged ongoing sexual abuse and harassment, he called C.F. to his office, and she denied the allegations. (Id. ¶ 34). Thereafter, defendant Qually allegedly directed plaintiff

and C.F. to return to their classroom, but plaintiff refused, due to her fear of C.F., and instead remained in the office for the remainder of the day. (Id. ¶ 35).

Defendant Qually contacted the school resource officer, defendant Scofield, and also notified Pullen-Smith. During his meeting with Pullen-Smith, defendant Qually questioned whether Pullen-Smith was aware of plaintiff's "issues with a female student", and allegedly advised Pullen-Smith that plaintiff was "involved in this trend of liking girls." (Id. ¶¶ 36-37). Defendant Qually allegedly did not propose any solutions to mitigate C.F.'s alleged abuse and bullying. (Id. at 37). At the end of the school day, defendant Scofield walked plaintiff to the school bus, and plaintiff was allegedly harassed during the entire bus ride. (Id. ¶ 38). When plaintiff arrived home, she informed Pullen-Smith about the alleged sexual abuse and harassment. (Id. ¶ 39).

The next day, Pullen-Smith returned to SVMS to discuss plaintiff's alleged abuse with defendant Qually. (Id. ¶ 40). Pullen-Smith indicated that she wanted to file a police report, but defendant Qually allegedly told her the situation did not "rise to the level of needing to file a police report", encouraged Pullen-Smith to talk to C.F.'s mother instead, and also suggested that Pullen-Smith should talk to her daughter to ensure she was not the aggressor. (Id. ¶¶ 40-41).

Later in January 2019, several students allegedly taunted plaintiff and accused her of lying about the alleged abuse she experienced. (Id. ¶ 44). Plaintiff reported the taunting to a teacher, Ms. Nieves, who allegedly told plaintiff that it was her fault. (Id. ¶ 45). The next day, Pullen-Smith went to SVMS to report Ms. Nieves's response to defendant Qually, who allegedly responded that he knew all of his teachers and did not think that Ms. Nieves would say such a thing. (Id.). Thereafter, Ms. Nieves allegedly began treating plaintiff differently. (Id. ¶ 66).

Specifically, Ms. Nieves would not speak to plaintiff, answer plaintiff's questions about schoolwork, or allow plaintiff to use the restroom. (Id.).

As a result of the alleged abuse and harassment, plaintiff's mental health deteriorated. (Id. ¶¶ 21, 28, 56). Plaintiff stopped interacting with her family, became depressed, began acting out in class, and eventually in March 2019, plaintiff attempted suicide, after which she was involuntarily committed for 17 days. (Id. ¶¶ 28, 48, 50, 56-57). When plaintiff returned to school, rumors circulated regarding her absence, and the bullying and threats resumed, of which Ms. Nieves, Ms. Fux, and defendant Qually were allegedly aware. (Id. ¶¶ 62-63, 65). Unable to focus on her schoolwork, plaintiff would hide in the bathroom for up to three class periods a day, and sometimes, she would spend the entire day in the principal's office to avoid the alleged harassment. (Id. ¶ 65). Pullen-Smith went to SVMS to advocate for plaintiff's protection, but the administrators and staff were allegedly unresponsive, and instead, five days after plaintiff returned to SVMS from involuntary commitment, she was suspended for insubordination. (Id. ¶ 68).

In total, plaintiff missed 38 days of school during the 2018-2019 academic year, due to defendants' alleged failure to address the bullying, harassment, and abuse plaintiff experienced. (Id. ¶ 80). In June 2019, plaintiff was placed in the custody of the North Carolina Department of Social Services under a juvenile petition, and thereafter, she was placed in a Level III residential treatment facility, where she is expected to remain until June 2021. (Id. ¶¶ 81-82).

Additional facts pertinent to the motion will be discussed below.

## COURT'S DISCUSSION

A.      Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter

jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party in such case "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id.

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993) ( "[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."). "Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998).

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(4) challenges the sufficiency of process, while Rule 12(b)(5) motions challenge the sufficiency of service of process. See Fed. R. Civ. P. 12(b)(4),(5). "When the process gives the defendant actual notice of the

pendency of the action, the rules . . . are entitled to a liberal construction" and "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984). Nevertheless, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." Id.

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, " [the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider " legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.      Analysis

1.      Service of Defendant School Board

Defendant School Board seeks to dismiss plaintiff's complaint for insufficient process and service of process. "A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4(c)(1). The time limits set forth in Rule 4(m) require that plaintiff serve all defendants within 90 days after a complaint is filed. Fed. R. Civ. P. 4(m).

Here, defendant School Board concedes that it was served with summons and complaint within the requisite time period under Rule 4(m). (See Mem. (DE 28) at 2). Nevertheless, it argues that plaintiff's claims against it should be dismissed because plaintiff initially served her complaint on defendant School Board on October 7, 2020, without any summons, which "legally necessitated that [defendant School] Board timely respond." (Mem. (DE 28) at 2). Defendant School Board's argument is unpersuasive. Although plaintiff prematurely served her proposed complaint on defendant School Board October 7, 2020, at that juncture, the magistrate judge had not ruled on plaintiff's motion to proceed in forma pauperis. Accordingly, the clerk had not issued summonses, and plaintiff had no way to serve any summons on defendant School Board. Moreover, the United States Court of Appeals for the Fourth Circuit has held that the service period under Rule 4(m) is tolled while the court considers a motion to proceed in forma pauperis. See Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010). Thus, plaintiff had no obligation to serve defendant School Board on October 7, 2020, because her motion to proceed in forma pauperis remained pending.

Defendant School Board's contention that service of plaintiff's proposed complaint on October 7, 2020, required a timely response by defendant School Board is unavailing. As early as October 15, 2020, eleven days before defendant School Board moved to dismiss for insufficient process and service of process, the docket reflected that the document served on defendant School Board was a proposed complaint, rather than a legally operative complaint, because the magistrate judge had not yet performed frivolity review. In effect, the face of the docket should have apprised defendant School Board that it had no obligation to answer or otherwise respond to plaintiff's proposed complaint.

Finally, defendant School Board cites Shaver, 2008 WL 942560, at *2 and Anderson v. Hoffman, No. 7:15-CV-14-FL, 2016 WL 11430764, at *7 (E.D.N.C. Feb. 16, 2016) for the

proposition that receiving actual notice of an action does not cure defects in service. However, Shaver and Anderson are instructively distinguishable, because unlike plaintiff here, the plaintiffs in those cases never properly effected service within the requisite time period.

For all these reasons, defendant School Board's motion to dismiss is denied in this part.

2.      Title IX Claim

Defendant School Board moves to dismiss plaintiff's Title IX claim. Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To state a Title IX claim on the basis of student-on-student sexual harassment, a plaintiff must plausibly allege that:

> (1) they were a student at an educational institution receiving federal funds; (2) they suffered sexual harassment that was so severe, pervasive, and objectively offensive that it deprived them of equal access to the educational opportunities or benefits provided by their school; (3) the school, through an official who has authority to address the alleged harassment and to institute corrective measures, had actual notice or knowledge of the alleged harassment; and (4) the school acted with deliberate indifference to the alleged harassment.

Doe v. Fairfax Cty Sch. Bd., ___ F. 3d ___, 2021 WL 2446782, *3 (4th Cir. 2021) (citations omitted).

Whether student-on-student harassment rises to the level of severe or pervasive, "depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 651 (1999)) (citations omitted). Courts "must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults." Id. (citation omitted). In consequence, "insults, banter, teasing, shoving, pushing and gender-specific conduct

that is upsetting to the students subjected to it" is not actionable in the school setting. Id. at 651-52. Rather, to be severe or pervasive, student-on-student harassment must effectively deny the victim access to the school's educational resources and benefits. Id. This can occur if the harassment:

> (1) results in the physical exclusion of the victim from an educational program or activity; (2) so undermines and detracts from the victim's educational experience as to effectively deny her equal access to an institution's resources and opportunities; or (3) has a concrete, negative effect on the victim's ability to participate in an educational program or activity.

Fairfax Cty. Sch. Bd., ___ F.3d at ___, 2021 WL 2446782, at *13 (citing Jennings v. Univ. of N. Carolina, 482 F.3d 686, 699 (4th Cir. 2007) (alterations and quotations omitted)). For purposes of this inquiry, the court "must consider all of the surrounding circumstances and use common sense and an appropriate sensitivity to social context to identify objectively hostile or abusive conduct." Id. (citing Jennings, 482 F.3d at 696 (citations and brackets omitted)).

Imputation of liability to an educational institution involves two considerations: (1) whether the institution had actual knowledge of the student-on-student sexual harassment; and (2) whether the institution was "deliberately indifferent" to that harassment. Davis, 526 U.S. at 646–47. For purposes of the first consideration, a school's receipt of "a report or complaint alleging sexual harassment is sufficient to establish actual notice under Title IX. This is an objective inquiry which asks whether an appropriate official in fact received such a report or complaint and whether a reasonable official would construe it as alleging misconduct prohibited by Title IX." Fairfax Cty Sch. Bd., ___ F.3d at ___, 2021 WL 2446782, at *7. Under the second consideration, a school acts with deliberate indifference "where its response . . . or lack thereof is clearly unreasonable in light of the known circumstances." S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cty., 819 F.3d 69, 76-77 (4th Cir. 2016) (citing Davis, 526 U.S. at 648). "While deliberate indifference is a high

standard that requires more than a showing of mere negligence, a half-hearted investigation or remedial action will [not] suffice to shield a school from liability." Fairfax Cty. Sch. Bd., ___ F.3d at ___, 2021 WL 2446782, at *10 (citing Baynard v. Malone, 268 F.3d 268, 236 (4th Cir. 2001) and S.B. ex rel. A.L., 819 F.3d at 76).

Here, plaintiff alleges, and defendant School Board does not dispute, that she was a student at an educational institution receiving federal funds. (Compl. (DE 22) ¶ 86). Moreover, plaintiff plausibly alleges that she experienced harassment on the basis of sex. (Id. ¶¶ 16, 18-20, 87); cf. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (holding that discrimination consisting of same–sex sexual harassment is actionable under Title VII); see also Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 219 (5th Cir. 1998) (holding that same-sex sexual harassment is actionable under Title IX as well as under Title VII); Dunlap v. Monroe Cty. Bd. of Educ., No. CV 1:16-11535, 2017 WL 4684181, at *4 (S.D.W. Va. Oct. 18, 2017) ("[N]umerous courts have recognized that same-sex harassment is actionable under Title IX." (collecting cases)); cf. Grimm v. Gloucester Cty. Sch. Bd., 972 F.3d 586, 616 (4th Cir. 2020) (concluding that, under Title IX, discrimination against a person for being transgender or homosexual constitutes discrimination of the basis of sex).

Turning to whether the alleged harassment was severe or pervasive, plaintiff plausibly alleges that the harassment had a concrete, negative effect on plaintiff's ability to participate in the educational opportunities and benefits provided by SVMS. Indeed, plaintiff alleges that, due to the alleged harassment, her mental health deteriorated, she was unable to focus on schoolwork, she hid in the bathroom for up to three class periods a day to avoid harassment, she sat with her head down on her desk in class, she went to a teacher's classroom for lunch and did not go to the gym due to fear, she attempted suicide, and she missed a total of 38 days of school during a single

academic year. (Id. ¶¶ 25, 28, 64-66, 80); see Fairfax Cty. Sch. Bd., ___ F.3d at ___, 2021 WL 2446782, at *14 ("[A] reasonable jury could reasonably find that the alleged sexual assault was severe enough to deprive [plaintiff] of equal access to educational opportunities or benefits . . . where the plaintiff . . . presented evidence showing that the alleged harassment made her feel humiliated, anxious, and uncomfortable, caused her to suffer severe emotional distress, and thereby had a negative impact on her participation . . . in school programs and on her academic performance." (quotations omitted)).

Arguing that the alleged harassment was not sufficiently severe or pervasive, defendant School Board contends that plaintiff's complaint is devoid of any suggestion that her grades suffered. While plaintiff's complaint does not reference her grades specifically, it allows the reasonable inference that her grades suffered, where it states that she could not focus on school work, she missed a significant amount of school, and "she would stay in her room and sleep all day." (Id. ¶¶ 47, 64, 80). Defendant School Board also argues that plaintiff's behavioral issues and actions outside of school, such as her suicide attempt at home, caused her absences from school, rather than the alleged harassment. Defendant School Board's argument ignores the fact that the harassment allegedly precipitated her behavioral issues and psychological symptoms, which in turn, led to plaintiff's absences from school. See, e.g., (Compl. (DE 22) ¶ 21) (alleging that, after C.F. began sexually abusing plaintiff, "Pullen-Smith noticed that [plaintiff's] behavior was changing, and plaintiff began to exhibit symptoms of depression"); (Id. ¶ 47) ("[Plaintiff's] anxiety, fear, and inability to escape bullying in the school setting caused [plaintiff] to engage in maladaptive behaviors at home.").

Finally, highlighting that plaintiff began to exhibit symptoms of depression before defendant Qually received notice of the alleged harassment, defendant School Board contends that

its conduct did not cause plaintiff's psychological symptoms. This argument is unpersuasive. While the timing of defendant Qually's notice is relevant to deliberate indifference, it has no bearing on whether the alleged harassment was severe or pervasive. See Fairfax Cty. Sch. Bd., ___ F.3d at ___, 2021 WL 2446782, at *13 ("[T]he main object of inquiry for [the severe or pervasive] prong is the alleged sexual harassment, rather than the defendant's response thereto . . . Indeed, the latter is relevant only to the issue of deliberate indifference. Thus, to the extent that the School Board claims it did not bar [plaintiff's] access to educational opportunities, its argument is misguided." (citing Jennings, 482 F.3d at 696–99 and Davis, 526 U.S. at 650-51)). In sum, the court finds that plaintiff sufficiently alleges severe or pervasive harassment.

Turning to the next element, plaintiff plausibly alleges that defendant School Board, through defendant Qually—an official who has authority to address the alleged harassment and to institute corrective measures—had actual notice or knowledge of the alleged harassment. First, several of the alleged acts of harassment occurred in the bathroom at SVMS, on the school bus, and in the hallways of SVMS, (see Compl. (DE 22) ¶¶ 16, 18, 20, 33), so defendant Qually had control over the context in which the alleged harassment occurred, as well as the authority to discipline the alleged harasser. See Davis, 526 U.S. at 646 ("Where . . . the misconduct occurs during school hours and on school grounds[,] . . . the [educational institution] retains substantial control over the context in which the harassment occurs."). Moreover, plaintiff establishes actual knowledge by alleging that she notified defendant Qually of the alleged harassment in January 2019. (See Compl. (DE 22) ¶¶ 33-34); Fairfax Cty. Sch. Bd., ___ F.3d at ___, 2021 WL 2446782, at *3 ("[A] school's receipt of a report that can objectively be taken to allege sexual harassment is sufficient to establish actual notice or knowledge under Title IX—regardless of whether school

officials subjectively understood the report to allege sexual harassment or whether they believed the alleged harassment actually occurred.").

Finally, taking plaintiff's allegations as true, liability can be imputed to defendant School Board on the theory of deliberate indifference. Defendant Qually questioned C.F. about the alleged abuse, and when C.F. denied the allegations, defendant Qually allegedly instructed plaintiff and C.F. to return to the classroom, which they shared together, discouraged Pullen-Smith from filing a police report, and characterized the alleged harassment as "issues with a female student", advising that plaintiff "was involved in this trend of liking girls." (Id. ¶¶ 34-37). As such, plaintiff plausibly alleges a clearly unreasonable response in light of the known circumstances, establishing deliberate indifference. See Fairfax Cty Sch. Bd., ___ F.3d at ___, 2021 WL 2446782, *11 ("[A] reasonable jury could draw any number of conclusions that would support a finding of deliberate indifference . . . [including] . . . that the school officials improperly trivialized and dismissed the reports of sexual assault; that they simply assumed, without adequate investigation, that the bus incident was a consensual sexual encounter between teenagers; . . . that they tried to sweep the reports under the rug. . . ; that they engaged in a "blame-the-victim" mentality in investigating and dealing with the bus incident."); Feminist Majority Found. v. Hurley, 911 F.3d 674, 690 (4th Cir. 2018) ("[T]he mere act of listening to students is not a remedy in and of itself."); S.B. ex rel. A.L., 819 F.3d at 77 (observing that "half-hearted investigation or remedial action" is insufficient to shield school from Title IX liability).

Defendant School Board argues its response was reasonable because defendant Qually notified Pullen-Smith and contacted law enforcement. However, the fact that defendant "took limited steps in response to the harassing and threatening [plaintiff], those actions do not preclude Title IX liability at [the motion to dismiss] stage." Hurley, 911 F.3d at 690 (citing Davis, 526 U.S.

at 649 (recognizing that court may determine, in appropriate situation, that institution did not act with deliberate indifference as matter of law)). Moreover, although defendant Qually initially contacted defendant Scofield, the school resource officer, he allegedly discouraged Pullen Smith from filing a police report, (see Compl. (DE 22) ¶¶ 40-41), which undermines defendant School Board's argument that defendant Qually consulted law enforcement.

In sum, plaintiff states a claim under Title IX, and therefore, defendant School Board's motion to dismiss is denied in this part.

### 3. Equal Protection Claim

Defendant School Board moves to dismiss plaintiff's equal protection claim asserted under 42 U.S.C. § 1983.[2] On the face of the complaint, plaintiff asserts this claim against defendant Scofield only. (See Compl. (DE 22) ¶¶ 100-104). Nevertheless, "[o]ut of an abundance of caution, Defendant Board's motion to dismiss assumes it is also directed to Defendant Board and, therefore, also addresses that claim herein." (Mem. (DE 30) at 13, n.3). To the extent plaintiff asserts her equal protection claim under § 1983 against defendant Scofield in his official capacity, such claim is "in effect, . . . against the governmental entity employing [the defendant]." Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006). Accordingly, the court turns to consider whether plaintiff states an equal protection claim under § 1983 against defendant School Board.

---

[2] The Fourth Circuit has held that a plaintiff may bring an equal protection claim against a school administrator in his or her individual capacity under 42 U.S.C. § 1983 for the school administrator's own deliberate indifference to student-on-student harassment. Hurley, 911 F.3d at 699-702. On the face of plaintiff's complaint, however, plaintiff asserts her equal protection claim under § 1983 against defendant Scofield only. (See Compl. (DE 22) ¶¶ 100-104). While such claim may be construed as also asserted against defendant School Board, since plaintiff's complaint states that defendant Scofield is an agent of Cumberland County Schools, it cannot be construed as being raised against defendant Qually in his individual capacity. Therefore, the court does not address whether plaintiff states an equal protection claim under § 1983 against defendant Qually in his individual capacity. Likewise, where defendant Scofield has not moved to dismiss, the court does not consider whether plaintiff states an equal protection claim under § 1983 against defendant Scofield in his individual capacity.

Defendant School Board "cannot be held liable solely for the acts of others, e.g., 'solely because it employs a tortfeasor.'" Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29, 36 (2010) (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978)). Instead, "[a] plaintiff stating a [ ] claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257–58 (2009) (citing Monell, 436 U.S. at 694). "[O]fficial policy can be inferred from a municipality's omissions as well as from its acts." Wellington v. Daniels, 717 F.2d 932, 935–36 (4th Cir. 1983). However, "such omissions are actionable only if they constitute 'tacit authorization' of or 'deliberate indifference' to constitutional injuries." Id. at 936 (citing Avery v. Burke Cty., 660 F.2d 111, 114 (4th Cir. 1981) ("[T]he conduct of the boards may be actionable if their failure to promulgate policies and regulations rose to the level of deliberate indifference.").

As stated in more detail herein, plaintiff plausibly alleges that defendant School Board acted with deliberate indifference to known harassment, and that her abuse was prolonged as a result. (See, e.g., Compl. (DE 22) ¶ 68) ("Pullen-Smith went to SVMS multiple times to advocate for [plaintiff] and ensure her protection at school. The administrators and staff were largely unresponsive. [Defendant] Qually refused to take action against the aggressors, but 5 days after [plaintiff] returned to SVMS, he suspended her for insubordination."). In consequence, plaintiff states an equal protection claim under § 1983 against defendant School Board. See Hurley, 911 F.3d at 703 ("[W]e are satisfied that — largely for the reasons set forth in our discussion of the Title IX sex discrimination claim — the plaintiffs have sufficiently alleged an equal protection claim."); see also Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (referring to Title IX analysis in discussing equal protection claim); Williams ex rel. Hart v. Paint Valley Local Sch. Dist., 400

F.3d 360, 369 (6th Cir. 2005) (recognizing "substantial[ ]" similarity between standards for deliberate indifference claims under Title IX and § 1983). Accordingly, defendant School Board's motion to dismiss is denied in this part.

4.      Governmental Immunity

To the extent plaintiff asserts negligent infliction of emotional distress claims against defendant School Board, or against defendant Qually in his official capacity, defendants School Board and Qually seek to dismiss such claims, on the basis of governmental immunity.

Under North Carolina law, "[a] county or city board of education is a governmental agency, and therefore may not be liable in a tort action except insofar as it has duly waived its immunity from tort liability pursuant to statutory authority." Overcash v. Statesville City Bd. of Educ., 83 N.C. App. 21, 22–23 (1986) (collecting cases); see, e.g., Presnell v. Pell, 298 N.C. 715, 721 (1979); Huff v. Northampton Cty. Bd. of Ed., 259 N.C. 75, 79 (1963). "As a general rule, the doctrine of governmental, or sovereign immunity bars actions against, inter alia, the state, its counties, and its public officials sued in their official capacity." Herring ex rel. Marshall v. Winston-Salem/Forsyth Cty. Bd. of Educ., 137 N.C. App. 680, 683 (2000). "[A] suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent." Meyer v. Walls, 347 N.C. 97, 110 (1997).

"N.C. Gen. Stat. § 115C–42 is the exclusive means of a local board of education to waive immunity." Ripellino v. N. Carolina Sch. Boards Ass'n, Inc., 158 N.C. App. 423, 428 (2003) (citing Lucas v. Swain County Bd. of Educ., 154 N.C. App. 357, 361 (2002)). The statute provides:

> Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such

insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.

N.C. Gen. Stat. § 115C-42.

Here, Certain Underwriters at Lloyd's ("Underwriters") issued defendant School Board the Policy, which provides coverage for liability arising from sexual harassment and sexual abuse. (Policy (DE 30-1) at 4, 9). As relevant here, "Underwriters' duty under the Policy shall be to indemnify the NAMED ASSURED for ULTIMATE NET LOSS in excess of the applicable SELF INSURED RETENTION." (Id. at 16) (capitalization in original). The Policy defines those terms as follows:

1.  **NAMED ASSURED:**

    Cumberland County Board of Education

    . . .

24. **SELF INSURED RETENTION** means that United States Dollar amount specified in the **SCHEDULE OF SELF INSURED RETENTIONS** which the **ASSURED** is obligated to pay of the **ULTIMATE NET LOSS**, after the application of any applicable **MAINTENANCE DEDUCTIBLE**, and before the **Specific Excess Limit of Insurance** of this Policy responds to the same loss.

    . . .

30. **ULTIMATE NET LOSS** means the total sum which the **ASSURED** is obligated to pay because of loss or damage covered under any Coverage Section of this Policy, either through adjudication or compromise, after first making proper deductions for all subrogation, **RECOVERY(IES)** and salvages.

(Policy (DE 30-1) at 4, 31-32). Moreover, defendant School Board's self insured retention for liability arising from sexual harassment and sexual abuse is $150,000.00. (Id. at 9).

Under the foregoing provisions, defendant School Board must pay a $150,000.00 self-insured retention for sexual harassment and sexual abuse liability before Underwriters is obligated to indemnify defendant School Board. Yet, because defendant School Board is immune from liability for tort claims, it cannot be required to pay any part of the $150,000.00 self insured

retention, and in turn, Underwriters will not indemnify defendant School Board. Therefore, the Policy does not constitute a waiver of defendant School Board's governmental liability. <u>See</u> N.C. Gen. Stat § 115C–42 ("[S]uch immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort."); <u>see also</u> <u>Magana v. Charlotte-Mecklenburg Bd. of Educ.</u>, 183 N.C. App. 146, 149 (2007) ("[T]he policy provides that it will not indemnify the Board unless the Board has first paid $1,000,000 to the claimant. Since the Board has statutory immunity from liability for tort claims, it cannot be required to pay any part of the $1,000,000 self-insured amount and, therefore, the excess policy will provide no indemnification."); <u>Hinson v. City of Greensboro</u>, 232 N.C. App. 204, 212–13 (2014) ("[D]efendant Greensboro purchased a $5 million excess liability policy with a $3 million self-insured retention from the Genesis Insurance Company . . . under the terms of the policy, the City [of Greensboro] is responsible for paying $3,000,000.00 before there is any potential coverage under the Genesis Insurance policy . . . we hold that defendant Greensboro has not waived its immunity as to plaintiff's State claims." (brackets in original)).

Plaintiff argues, however, that defendant School Board may have waived its immunity by participating in a governmental risk pool or purchasing other insurance policies. Because plaintiff "cannot state with certainty . . .without the benefit of discovery" whether defendant School Board participated in a governmental risk pool, or purchased other insurance policies in addition to the Policy, plaintiff argues that defendants School Board's and Qually's motions to dismiss should be denied to allow discovery on the immunity issue. (Mem. (DE 41) at 7).

The "doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions." <u>Iqbal</u>, 556 U.S. 678; <u>see also</u> <u>Green v. Kearney</u>, 203 N.C. App. 260, 268, (2010) ("In order to overcome a defense of immunity, the complaint must specifically allege a waiver of

immunity. Absent such an allegation, the complaint fails to state a cause of action." (brackets omitted)). Here, plaintiff alleges "[u]pon information and belief, the Defendant [School Board] has waived immunity for the state law claims by purchasing liability insurance." (Compl. (DE 22) ¶ 116). Plaintiff's bare assertion of waiver of governmental immunity fails in the face of defendant School Board's showing that no waiver of governmental immunity has occurred.

Accordingly, defendants School Board's and Qually's motions to dismiss are granted in this part. To the extent plaintiff asserts negligent infliction of emotional distress claims against defendant School Board or against defendant Qually in his official capacity, such claims are dismissed on the basis of governmental immunity

### 5. Public Official Immunity

Defendant Qually seeks dismissal of plaintiff's negligent infliction of emotional distress claim, asserted against him in his individual capacity, on the basis of public official immunity.

"A suit against a defendant in his individual capacity means that the plaintiff seeks recovery from the defendant directly." Isenhour v. Hutto, 350 N.C. 601, 608 (1999) (quoting Meyer, 347 N.C. at 110). "It is settled in this jurisdiction that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." Meyer, 347 N.C. at 112. "The rule in such cases is that an official may not be held liable unless it be alleged and proved that his act, or failure to act, was corrupt or malicious, or that he acted outside of and beyond the scope of his duties." Smith v. State, 289 N.C. 303, 331 (1976). "An employee, on the other hand, is personally liable for negligence in the performance of his or her duties proximately causing an injury." Isenhour, 350 N.C. at 610 (internal citations omitted).

In distinguishing between public officials and public employees, North Carolina law recognizes several distinctions, including: "(1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties." Id. "Discretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." Meyer, 347 N.C. at 113 (internal quotations omitted).

North Carolina law creates the office of school principal by statute providing for school administrators. See N.C. Gen. Stat. § 115C-287.1(a); Farrell v. Transylvania Cty. Bd. of Educ., 175 N.C. App. 689, 696 (2006). Additionally, North Carolina courts recognize "that school officials such as superintendents and principals perform discretionary acts requiring personal deliberation, decision, and judgment." Farrell, 175 N.C. App. at 695 (citing Gunter v. Anders, 114 N.C. App. 61, 67–68 (1994)). Accordingly, principals are entitled to public official immunity for their discretionary acts. See Farrell, 175 N.C. App. at 695; Gunter, 114 N.C. App. at 67–68.

Defendant Qually, as principal of SVMS, is entitled to public official immunity, unless plaintiff plausibly alleges his actions were corrupt or malicious, or beyond the scope of his duties. See Smith, 289 N.C. at 331. Malice and corruption are difficult to show because "it is presumed that a public official in the performance of his official duties acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." In re Annexation Ordinance No. 300–X, 304 N.C. 549, 551 (1981). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or

injurious to another." Grad v. Kaasa, 312 N.C. 310, 313 (1984). For purposes of this inquiry, "a conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." Meyer, 347 N.C. at 114.

Here, plaintiff fails to plausibly allege that any acts or omissions by defendant Qually were corrupt or malicious, or beyond the scope of his duties. See Smith, 289 N.C. at 331. Defendant Qually allegedly questioned C.F. about the harassment allegations, alerted the school resource officer, and contacted Pullen-Smith. (Compl. (DE 22) ¶¶ 34, 36-37). Plaintiff does not explain how such acts exceeded the scope of defendant Qually's duties, as SMVS principal, and in fact, plaintiff's complaint alleges that "[a]t all relevant times, Defendant Qually was an employee of CCS acting within the scope of his employment and authority at CCS." (Id. ¶ 91).

Moreover, although defendant Qually allegedly sent plaintiff and C.F. back to the same classroom when C.F. denied the allegations; inquired whether Pullen-Smith was aware of plaintiff's "issues with a female student", advising that plaintiff was "involved in this trend of liking girls"; discouraged Pullen-Smith from filing a police report because "the situation did not rise to that level"; suggested that Pullen-Smith talk to plaintiff to ensure that she was not the aggressor; and refused to take action against the alleged aggressors, (see id. ¶¶ 35, 47, 40-41, 44-45, 68), plaintiff's complaint is devoid of any facts suggesting that defendant Qually committed the foregoing actions with the intent "to be prejudicial or injurious to another." Grad, 312 N.C. at 313. Although the court found herein that plaintiff plausibly alleges deliberate indifference, deliberate indifference is not synonymous with malice. See Baynard, 268 F.3d at 236 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("deliberate indifference describes a state of mind more blameworthy than negligence" but "is satisfied by something less than acts or

omissions for the very purpose of causing harm or with knowledge that harm will result")). And plaintiff's conclusory assertion that defendant Qually acted "negligently, recklessly, and in bad faith", (Compl. (DE 22) ¶¶106-107), cannot overcome public official immunity. See Meyer, 347 N.C. at 114.

Accordingly, defendant Qually's motion to dismiss is granted in this part, and plaintiff's negligent infliction of emotional distress claim asserted against defendant Qually in his individual capacity is dismissed.

### 6. Official Capacity Claim

Defendant Qually moves to dismiss plaintiff's claim 42 U.S.C. § 1983, to the extent plaintiff asserts such a claim against defendant Qually in his official capacity.[3] "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). A § 1983 claim against a school official in his or her official capacity "is essentially a claim against the [School] Board and thus should be dismissed as duplicative." Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004); see Huggins v. Prince George's Cty., Md., 683 F.3d 525, 532 (4th Cir. 2012). Here, defendant School Board is subject to plaintiffs' § 1983 action. (See Compl. (DE 22) ¶ 7). Additionally, defendant School Board has been given notice and an opportunity to respond. (See, e.g., Motion to Dismiss (DE 14)). Accordingly, to the extent

---

[3]    Plaintiff asserts three claims in total: 1) a Title IX claim, 2) a claim under 42 U.S.C. § 1983, and 3) a negligent infliction of emotional distress claim. As stated in more detail herein, the court dismisses plaintiff's negligent infliction of emotional distress claims asserted against defendant Qually in his individual and official capacities. Moreover, Title IX does not provide a cause of action against individual defendants. See Fitzgerald, 555 U.S. at 247 ("Title IX reaches institutions and programs that receive federal funds... [and]... has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."). Therefore, the only remaining claim that could be asserted against defendant Qually in his official capacity is plaintiff's claim under 42 U.S.C. § 1983.

plaintiff asserts a § 1983 claim against defendant Qually in his official capacity, such claim is dismissed.

**CONCLUSION**

Based on the foregoing, defendant Cumberland County's motions to dismiss (DE 14, 29) are GRANTED IN PART and DENIED IN PART, and defendant Qually's motion to dismiss (DE 31) is GRANTED.

Plaintiff's Title IX and § 1983 claims against defendant School Board are ALLOWED to proceed.  Plaintiff's claim for negligent infliction of emotional distress against defendant Qually in his individual capacity is DISMISSED on the basis of public official immunity.  To the extent plaintiff asserts negligent infliction of emotional distress claims against defendant School Board or defendant Qually in his official capacity, such claims are DISMISSED on the basis of governmental immunity.  To the extent plaintiff asserts a 42 U.S.C. § 1983 claim against defendant Qually in his official capacity, such claim is DISMISSED.

SO ORDERED, this the 21st day of June, 2021.

LOUISE W. FLANAGAN<br>
United States District Judge